DISTRICT OF COLUMBIA, et al.,
Appellants/Cross–Appellees,

v.

James E. BROWN, Appellee/Cross–
Appellant.

Nos. 96–CV–440, 96–CV–515.[1]

District of Columbia Court of Appeals.

Argued Nov. 4, 1998.
Decided Nov. 4, 1999.

Edward E. Schwab, Assistant Corporation Counsel, with whom Jo Anne Robinson, Principal Deputy Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Martin B. White, Assistant Corporation Counsel, were on the brief, for appellants/cross-appellees.

Winfred R. Mundle, Washington, DC, for appellee/cross-appellant.

1. Although Mr. Brown filed a cross-appeal in this case, No. 96–CV–515, he presents for consideration the same issue as the District. Therefore, our opinion in No. 96–CV–440 also applies to appeal No. 96–CV–515.

Before WAGNER, Chief Judge, and
REID, Associate Judge, and
GALLAGHER, Senior Judge.

REID, Associate Judge:

This case raises the issue of whether the District of Columbia is required to pay interest on a back pay award to appellee James E. Brown, who was found by the District of Columbia Office of Employee Appeals ("OEA") to have been unlawfully terminated from a position with the District of Columbia Public Schools ("DCPS"). Mr. Brown sought enforcement of the OEA decision in the trial court and that court determined, *inter alia*, that he was entitled to interest on his back pay award under a 1987 amendment to the Federal Back Pay Act, 5 U.S.C. § 5596 (1994) ("FBPA").[2] The District contends that the trial court erred in awarding interest under the 1987 amendment because "relevant provisions of the District's Home Rule Act[, D.C.Code §§ 1–201 *et seq.* (1999),] and Comprehensive Merit Personnel Act[, §§ 1–601 *et seq.*, ("CMPA")] make the [FBPA] applicable to District employees only in the form in which it existed before relevant provisions of the [CMPA] took effect, at which time the [FBPA] did not allow for interest on back pay awards." We reverse the trial court's award of interest, and hold that District employees, including those hired before 1980, are not entitled to interest on back pay awarded under the FBPA.

**FACTUAL SUMMARY**

Mr. Brown commenced employment with the District government on April 2, 1979 as General Counsel of DCPS. On May 3, 1981, he left this position because he was subject to disbarment proceedings. However, he was offered, and accepted, a temporary appointment as Special Assistant to the Superintendent, which did not require bar membership. He was disbarred in August 1981. The temporary Special Assistant position was later abolished because it was unauthorized. Since Mr. Brown was unqualified to resume his position as General Counsel due to his disbarment, DCPS terminated his employment in April 1982.

Mr. Brown appealed his termination to the OEA in September 1982. After numerous administrative and court proceedings, an OEA hearing examiner concluded that Mr. Brown had acquired permanent employee status with the school system that was independent of his initial position as General Counsel; and thus, issued an Initial Decision reversing his termination on April 15, 1991.[3] The examiner ordered DCPS to: 1) reinstate Mr. Brown to a position equivalent to General Counsel; 2) restore all pay and benefits that he lost; and 3) file with the OEA documents showing compliance with this order within 30 days from the date of the final decision. On August 3, 1993, OEA affirmed, in part, the hearing examiner's decision, but modified the reinstatement provision to require Brown's restoration to his previous position as special assistant, if available, or

**2.** 5 U.S.C. § 5596(b)(2)(A), which became effective December 22, 1987, states that: "An amount payable under paragraph (1)(A)(i) [which authorizes back pay] of this subsection shall be payable with interest."

**3.** The examiner stated in part:
Faced with [a] lack of written regulations and conflicting statements of [DCPS] policy, this examiner concludes that [DCPS] has not met its burden of establishing that upon the termination of Employee's temporary appointment, Employee's only right was to be returned to the position of General Counsel. This examiner also concludes

based on [DCPS] policy that Employee had a right to be returned to an equivalent and available position. His inability to perform the duties of the position of General Counsel does not constitute cause for his termination from the service, since he did not encumber that position at the time and he had a right to return to an equivalent and available position. It appears that Employee would have to be incompetent to perform in any available position to conclude that his incompetency constituted cause for removal from the Service.
(Footnote omitted).

alternatively, to a position equal in grade, pay, and status. When DCPS failed to reinstate Mr. Brown within 30 days of the decision, the OEA Board issued an October 5, 1993 order directing DCPS to submit a written statement concerning the status of the school system's compliance with the OEA order. Three days later, Mr. Brown filed a complaint in the trial court against the District seeking: 1) enforcement of the administrative order authorizing his reinstatement, back pay and benefits; 2) interest on his back pay award; and 3) attorney's fees. He also sought compensation for the additional tax liability[4] and alleged emotional distress resulting from the litigation.

On February 1, 1995, the trial court ruled that Mr. Brown was entitled to attorney's fees for the court proceedings, but granted the District's motion for summary judgment regarding his claims for: 1) attorney's fees for obtaining the administrative order (he failed to submit his request in a timely fashion); and 2) interest on his back pay.[5] Following consideration of Mr. Brown's motion to alter or amend the summary judgment with regard to the interest issue, the trial court concluded that it had erred in its previous decision, and issued a new order filed April 18, 1995 approving interest on Mr. Brown's back pay award.

The court interpreted the FBPA amendment as authorizing interest on all decisions which became final on or after December 22, 1987.[6] Therefore, according to the trial court, Mr. Brown was entitled to interest on his back pay because the OEA's final decision awarding him interest was made on July 29, 1993.

On May 25, 1995, the District filed a motion to reconsider the new order, arguing that the Council of the District of Columbia only incorporated provisions of the FBPA as the Act existed prior to January 1, 1980, and thus, superseded the applicability of any subsequent amendments to the FBPA, including the 1987 amendment authorizing interest. On June 21, 1995, the trial court denied the motion to reconsider, noting that this court has "foreclosed application of the [FBPA] in such a 'piecemeal' fashion." The trial court further stated that the Home Rule Act requires "the continuing applicability of Federal law, including subsequent amendments, until District law provides equivalent benefits, an event which has not yet occurred." After considering both parties' trial memoranda and supplemental material, the trial court issued an order on March 4, 1996 awarding Mr. Brown $340,-216.43 in interest on back pay[7] and $18,-

---

4. Mr. Brown's claim of additional tax liability was based upon receiving pay for a period of several years in a lump sum back pay award.

5. Both parties had agreed that Mr. Brown was entitled to reinstatement, back pay and benefits.

6. In reaching its April 1995 decision, the trial court relied on "historical and statutory notes to the Federal Back Pay Act" which stated:

> Except as provided in paragraph (2), the amendments made by subsection (a) [amending this section] shall take effect on the date of the enactment of this Act [Dec. 22, 1987], and shall apply with respect to any employee found, *in a final judgment entered or a final decision otherwise rendered on or after such date,* to have been the subject of an unjustified or unwarranted personnel action, the correction of which entitled such employee to an amount under

section 5596(b)(1)(A)(i) of title 5, United States Code [subsec. (b)(1)(A)(i) of this section]. (Emphasis added.)

The trial court then concluded that:

> The exceptions in paragraph (2) are inapplicable to this case. Thus, it is clear that the interest amendment applies to cases in which the final decision is rendered after December 22, 1987. It does not matter when an employee was hired.
>
> In the instant matter, the Office of Employee Appeals entered its initial decision on April 15, 1991, and its opinion and order on petition for review on July 29, 1993. As a result, pursuant to the Federal Back Pay Act, 5 U.S.C. § 5596(b)(1)(A)(i) and (2)(A) (Dec. 22, 1987) (1995 Supp.), the final decision of OEA was made after December 22, 1987. Therefore, plaintiff is entitled to interest on his back pay award.

7. The District had previously paid the back pay to Mr. Brown.

778.54 in attorney's fees; and denying his claims for damages for emotional distress and additional tax liability. The District appealed the trial court's April 1995 decision, which was reaffirmed in its March 1996 order, awarding interest on back pay under the 1987 amendment to the FBPA.

## ANALYSIS

*Statutory Framework*

Prior to home rule, the FBPA specifically applied to District government employees and entitled them to back pay in cases concerning any "unjustified or unwarranted" personnel action. 5 U.S.C. § 5596(b)(1)(A)(i). In the 1973 Home Rule Act, Congress directed the District to establish its own comprehensive personnel system as a replacement for the existing personnel system. *Zenian v. District of Columbia Office of Employee Appeals*, 598 A.2d 1161, 1163 (D.C.1991) (citing *District of Columbia v. Thompson*, 593 A.2d 621, 632 (D.C.1991)). Congress set forth its mandate and policy in D.C.Code § 1–242 which states in pertinent part:

(2) ... All actions affecting [District] personnel ... shall, until such time as legislation is enacted by the Council superseding such laws and establishing a permanent District government merit system, pursuant to paragraph (3) of this section, continue to be subject to the provisions of acts of Congress relating to the appointment, promotion, discipline, separation, and other conditions of employment applicable to officers and employees of the District government ....

(3) ... Personnel legislation enacted by Congress prior to or after January 2, 1975, including, without limitation, legislation relating to ... pay ... applicable to employees of the District government as set forth in § 1–213(c), ·shall continue to be applicable until such time as the Council shall, pursuant to this section, provide for coverage under a District government merit system.... The system may provide for continued participation in all or part of the Federal Civil Service System and shall provide for persons employed by the District government immediately preceding the effective date of such system personnel benefits, including but not limited to pay ... all at least equal to those provided by legislation enacted by Congress, or regulation adopted pursuant thereto, and applicable to such officers and employees immediately prior to the effective date of the system established pursuant to this Act ....

In addition, § 1–213(c) specified that: "Unless otherwise specifically provided in this Act, nothing contained in this Act shall be construed as affecting the applicability to the District government of personnel legislation relating to the District government until such time as the Council may otherwise elect to provide equal or equivalent coverage."

The Council adopted a new District personnel system, the CMPA, on October 31, 1978, and it became law on March 3, 1979. The CMPA mandated the retention of certain federal personnel rights for those employed in the District government at the time the CMPA took effect. As § 1–602.4(a) specified:

Persons employed by the District of Columbia government serving on the date that this chapter becomes effective, as provided in § 1–637.1, shall be guaranteed rights and benefits at least equal to those currently applicable to such persons under provisions of personnel law and rules and regulations in force on the date immediately prior to the date that this chapter becomes effective as provided in § 1–637.1.

Section 1–602.4 is "a savings clause which implements the directive of § 1–242(3) that [concrete] personnel benefits are to remain 'at least equal to' those established under the former Federal Civil Service System" for pre–1980 District employees. *District of Columbia v. Hunt*, 520 A.2d 300, 302 (D.C.1987) (*"Hunt I"*); *see also American Fed'n of Gov't Employees v.*

*Barry,* 459 A.2d 1045, 1053 (D.C.1983) ("*AFGE*") ("[U]nder the CMPA, ... concrete entitlements were required to remain at least equal to the previously applicable federal entitlements" for employees of the District government hired before January 1, 1980.). In contrast to concrete entitlements, however, the District was not required to retain federal "statutory processes, mechanisms or procedures used in personnel administration" after the enactment of its own personnel system. *Hunt I, supra,* 520 A.2d at 303.

In accordance with Congress' intent that the District's new personnel system be separate and autonomous, the Council of the District of Columbia enacted legislation to supersede the applicability of several federal statutes, including the FBPA, to District employees hired on or after January 1, 1980. On September 26, 1980, this legislation was amended and recodified as § 1–633.2(a)(5)(G).[8] In *Hunt I, supra,* we determined that attorney's fees constituted a concrete entitlement, under the FBPA, "previously available under the federal system," and thus, upheld a trial court decision to award attorney's fees to a pre–1980 District employee, who successfully litigated a personnel action. *Hunt I, supra,* 520 A.2d at 304. Because of the "at least equal to" language in §§ 1–242(3) and –602.4(a), "[t]he District ... cannot supersede the Back Pay Act as applied to pre-January 1, 1980 employees [without providing a replacement] back pay provision in the CMPA ...." *Id.* (footnote omitted). The "at least equal to" language "provides a floor for benefits under the [CMPA], equal to those applicable to federal employees 'immediately prior' to enactment of District personnel legislation." *Id.* at 303 (quoting *AFGE, supra,* 459 A.2d at 1049).

Another amendment to the CMPA affected both pre–1980 employees and those

hired after 1980. The CMPA was amended, effective March 4, 1981, by D.C. Law 3–130, to direct the Mayor to "develop ... a new compensation system for all employees in the Career and Excepted Services." D.C.Code § 1–612.4(a). This section also provides that "[u]ntil such time as a new compensation system is approved, the compensation system, ... in effect on December 31, 1979, shall continue in effect ...." D.C.Code § 1–612.4(e). On July 15, 1981, the Corporation Counsel for the District issued an opinion regarding the applicability of D.C. Law 3–130 to the FBPA. The Corporation Counsel concluded that: .

> Based upon the ... recitation of the legislative developments, it seems clear that the "compensation system" in effect on December 31, 1979 would continue into the future until a new compensation system was submitted to the Council for approval. As of December 31, 1979 the Back Pay Act (5 U.S.C. § 5596) applied to District employees as a component of the "compensation system" then in effect....
>
> Although it is conceivable that in a carefully drafted "new compensation system", the District could modify the benefits of the Back Pay Act, until such occurs, the District must continue with the compensation system existing as of December 31, 197[9], and clearly back pay was incorporated into that system.

Memorandum of the Corporation Counsel, July 15, 1981, at 2; *see also* Mayor's Memorandum, Number 81–53, July 17, 1981, at 2 ("[T]he D.C. Government Comprehensive Merit Personnel Act, D.C. Law 2–139, as amended, D.C. Law 3–130 continues the applicability of the Back Pay Act ... to the District Government."). Given § 1–612.4(a), we concluded in *Zenian, supra,* that the FBPA's attorney's fees provision, which was "in effect on December 31, 1979," applied to employees of the District

---

**8.** Specifically, § 1–633.2(a)(5)(G) states in pertinent part: "The following provisions of Title 5 of the [U.S.C.] are superseded for all employees of the District of Columbia govern-

ment: ... (G) ... 5596(a)(5) (relating to pay administration for employees of the District of Columbia government)."

government hired after January 1, 1980 because "the right to recover such fees was ... a part of the compensation system in effect on December 31, 1979," and the District had not yet developed a new compensation system. 598 A.2d. at 1165.

The attorney's fees provision, unlike the 1987 amendment providing for interest on a back pay award, was part of the FBPA when the CMPA took effect. Therefore, the interest issue before us is dissimilar to the attorney's fees question addressed in *Hunt I* and *Zenian, supra,* because the FBPA contained no authority, as of the effective date of the CMPA, for the award of interest on back pay.

*The 1987 Amendment to the FBPA, OEA's Position, and the Trial Court's Decision*

In 1987, Congress amended the FBPA to provide interest on back pay awards. 5 U.S.C. § 5596(b)(2)(A). The amendment, part of the Congress' continuing appropriations for Fiscal Year 1988, Public Law 100–202, December 22, 1987, 101 Stat. 1329, was contained in § 623 of the appropriations act. Section 623(a)(2), in pertinent part, added subsection (2)(a) to 5 U.S.C. § 5596(b) and stated simply: "An amount payable under paragraph (1)(A)(1) of this subsection shall be payable with interest." Section 623(b) set forth the effective date in two subsections. Subsection (b)(1) provided:

(1) Generally—Except as provided in paragraph (2), the amendments made by subsection (a) shall take effect on the date of the enactment of this Act, and shall apply with respect to any employee found, in a final judgment entered or a final decision otherwise rendered on or after such date, to have been the subject of an unjustified or unwarranted personnel action, the correction of which enti-tles such employee to an amount under section 5596(b)(1)(A)(i) of title 5, United States Code.

Subsection (b)(2)(A) specified an exception for "cases in which a right to interest was specifically reserved, contingent on the enactment of a statute authorizing the payment of interest on claims brought under such section 5596," where final judgment or decision occurred before the effective date of the 1987 amendment.[9]

We have previously stated that the District must provide its pre–1980 employees, like Mr. Brown, with concrete entitlements "at least equal to ... previously applicable ... entitlements" available to them when they were part of the federal system. *AFGE, supra,* 459 A.2d at 1049. We have said nothing, however, about the applicability to pre–1980 employees, or those hired after 1980, of amendments to the FBPA adopted after 1980. In its June 1995 order denying the District's motion for reconsideration, the trial court acknowledged that: "There is merit in the contention that since the [FBPA] in 1979 did not provide interest on back pay, the District matched that level of protection and, therefore the CMPA has superseded ... [the interest] provision of the [FBPA]." Nonetheless, the trial court concluded that it had to award interest on back pay because our decision in *Zenian, supra,* stated that the FBPA could not be "applied in a piecemeal fashion." 598 A.2d at 1165 (citing *Hunt I, supra,* 520 A.2d at 303–04).

OEA and the trial court have reached different conclusions as to the applicability to pre–1980 District employees of the 1987 FBPA provision pertaining to interest on back pay. The Board of OEA concluded

---

9. Section 623(b)(2)(A) reads:
   (2) Exception.—
     (A) Cases in which a right to interest was reserved.—
   The amendments made by subsection (a) shall also apply with respect to any claim which was brought under section 5596 of title 5, United States Code, and with respect to which a final judgment was entered or a final decision was otherwise rendered before the date of the enactment of this Act, if, under terms of such judgment or decision, a right of interest was specifically reserved, contingent on the enactment of a statute authorizing the payment of interest on claims brought under such section 5596.

in *Galbreith v. D.C. Public Schools,* OEA Dkt No. 2401–0290–81 (1989) that: "[T]he Home Rule Act only protects personnel benefits Employee had on March 2, 1979. Since the Back Pay Act did not provide for interest against the government on March 2, 1979, the District government is not required to provide such a benefit pursuant to the Home Rule Act." *Id.* at 2. Thus, "[s]ince interest is not a personnel benefit which is protected by the Home Rule Act, ... the CMPA supercedes the Back Pay Act's provision allowing for interest on back pay." *Id.* at 3. In contrast, in its June 21, 1995 order, the trial court stated that: "the plain language of the Home Rule Act expresses the intent of Congress that amendments to the Federal Back Pay Act shall apply to pre–1980 employees of the District of Columbia." Therefore, Mr. Brown is "entitled to interest on his back pay award."

*The Parties' Arguments*

In arguing that the FBPA interest provision applies to him, Mr. Brown focuses in part on language in the 1987 amendment stating that it "shall apply with respect to any employee found, in a final judgment entered or a final decision otherwise rendered on or after [the effective date of the amendment act]." Because OEA decided his case in July 1993, Mr. Brown maintains that the interest provision applies to him. This is the argument which persuaded the trial court to reverse its initial decision not to grant interest on the back pay award. Mr. Brown also contends that, consistent with *Zenian, supra,* the FBPA interest provision, which he describes as a concrete entitlement, could not have been superseded by the CMPA with respect to pre–1980 District employees because the CMPA contains no provision for interest on back pay. He also agrees with the trial court's conclusion that the FBPA is not to be applied in a piecemeal fashion.[10]

The District asserts that the FBPA applies to pre–1980 employees only in its pre–1980 form and, because there was no provision for interest prior to the 1987 FBPA amendment, Mr. Brown is not entitled to interest on his back pay award. Because the District superseded the FBPA in D.C.Code § 1–633.2(a)(5)(G), the District maintains, federal personnel provisions are applicable only as they existed prior to 1980. Moreover, the District argues that OEA's decision in *Galbreith, supra,* concluding that the FBPA interest provision does not apply to District employees, is not only entitled to deference but "is compelled by the plain language of the relevant statutory provisions." Furthermore, the District argues that nothing in our *Zenian* decision requires statutory personnel amendments, post-CMPA, to be made applicable to District employees.

*The Issue Presented*

We have never before decided whether a District employee who was hired prior to or after 1980 is entitled to interest on a back pay award, based on a 1987 amendment to the FBPA which was enacted after the CMPA became effective. Neither *Zenian, supra,* nor *Hunt I, supra,* involved interest on back pay or a post–1980 amendment to the FBPA or any other federal personnel act. Therefore, neither case is directly on point. The trial court's conclusion that Mr. Brown was entitled to interest on his back pay award was prompted in part by its concern for "piecemeal" application of the FBPA. In *Zenian, supra,* we did emphasize that "the

---

10. In addition, by relying on the parenthetical "relating to pay administration" in § 1–633.2(a)(5)(G), Mr. Brown attempts to distinguish between "pay administration" and "pay," arguing that "pay" is a "concrete entitlement that the District was obligated to maintain" and " 'pay administration' is a process or mechanism which the Council effectively dealt with in an amendment to the CMPA" set forth in D.C.Code §§ 1–612 *et seq.* The parenthetical phrase is merely a description of the variety of provisions that relate to pay. Indeed the regulations implementing the FBPA contain provisions relating to the different types of pay such as overtime and night pay as well as back pay. *See* 5 CFR Part 550.

FBPA is not to be applied in a piecemeal fashion." However, that principle was articulated in consideration of the counsel fee provision of the FBPA which existed prior to 1980. We stated: "We held in *Hunt I* that the FBPA is not to be applied in a piecemeal fashion, and that its counsel fee provisions are an integral part of the Act as a whole and may not be severed from it." *Zenian, supra,* 598 A.2d at 1165 (citing *Hunt I, supra,* 520 A.2d at 303–04). The interest provision with which we are concerned in this case was not an integral part of the FBPA in 1980, and interest generally was not given on back pay awards.

*The FBPA and Interest on Back Pay Awards Prior to 1980*

Mr. Brown cites no authority supporting an award of interest on back pay under the FBPA prior to 1980. We have found at least two cases in which such interest was not awarded. In *Fitzgerald v. Staats,* 188 U.S.App. D.C. 193, 578 F.2d 435 (1978), the court concluded that an improperly dismissed employee of the Air Force was not entitled to interest on a back pay award. In reaching its conclusion that interest could not be given under the FBPA (before the 1987 amendment), the court stated: "Specifically in the context of interest, the [Supreme] Court has ruled that 'the intention of Congress to permit the recovery of interest must be expressly

and specifically set forth in the statute....'" *Id.,* 188 U.S.App. D.C. at 196, 578 F.2d at 438 (quoting *United States v. Thayer–West Point Hotel Co.,* 329 U.S. 585, 590, 107 Ct.Cl. 714, 67 S.Ct. 398, 91 L.Ed. 521 (1947)). Because the FBPA contained no interest provision at the time the case was decided, interest was not awarded to the Air Force employee. The Sixth Circuit reached the same conclusion in *Van Winkle v. McLucas,* 537 F.2d 246, 248 (6th Cir.1976) (per curiam), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1105, 51 L.Ed.2d 539 (1977). The court there declared:

> We believe that the award of interest must be reversed. The Back Pay Act is quite detailed in the relief it affords. Obviously, Congress could have added the award of interest to the remedies which it did provide. Since the Back Pay Act creates a cause of action against the sovereign which did not previously exist, a strict construction of the statutory remedy is generally held to be required.

*Id.* at 248 (citing *Thayer–West Point Hotel Co., supra*). *See also Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) ("When Congress has intended to waive the United States' immunity with respect to interest, it has done so expressly.").[11] Based on these

11. In two cases, one involving the Postal Service and the other the Panama Canal, interest was awarded before 1980 under the FBPA. However, both of the cases involved special circumstances. In *White v. Bloomberg,* 501 F.2d 1379 (4th Cir.1974), the court found no impediment to an award of post-judgment interest since the Congress, through the Postal Reorganization Act, permitted the Postal Service to "sue and be sued" and thus "waive[d] sovereign immunity when it authorize[d] a governmental agency to sue and be sued in its own name." *Id.* at 1385; *see also Loeffler v. Frank,* 486 U.S. 549, 556, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) ("By launching 'the Postal Service into the commercial world,' and including a sue-and-be-sued clause in its charter, Congress has cast off the Service's 'cloak of sovereignty' and given it the 'status of a private commercial enterprise.... It follows that Congress is pre-

sumed to have waived any otherwise existing immunity of the Postal Service from the interest awards.'") (quoting *Shaw, supra,* 478 U.S. at 317 n. 5, 106 S.Ct. 2957). Unlike the Postal Service, the District is "a body corporate for municipal purposes" and even though it could "sue and be sued" prior to 1980, *see* D.C.Code § 1–102, its ultimate legislative authority lies in Congress, *see* Article 1, § 8, ¶ 17 of the Constitution of the United States ("The Congress shall have power ... to exercise exclusive legislation in all cases, whatsoever, over [the] District."). Had Congress determined that, unlike the federal government, the District could award interest under the FBPA prior to 1980, it would have said so expressly in legislation. The award of prejudgment interest under the FBPA in *Payne v. Panama Canal Co.,* 607 F.2d 155 (5th Cir. 1979) was based "in part upon the law of the

cases, we conclude that, generally, employees were not entitled to interest on back pay awards under the FBPA before 1980.

*Statutory Interpretation*

■ Our task is to interpret provisions of the Home Rule Act, the CMPA and the 1987 FBPA amendment. " 'In interpreting a statute, we are mindful of the maxim that we must look first to its language; if the words are clear and unambiguous, we must give effect to its plain meaning.' " *McPherson v. United States,* 692 A.2d 1342, 1344 (D.C.1997) (quoting *J. Parreco & Son v. Rental Hous. Comm'n,* 567 A.2d 43, 45 (D.C.1989) (citation omitted)); *see also* 2A SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 46.04, at 98 (5th ed.1992). As we reiterated in *Citizens Ass'n of Georgetown v. Zoning Comm'n of the District of Columbia,* 392 A.2d 1027 (D.C.1978): " 'In construing a statute the primary rule is to ascertain and give effect to legislative intent and to give legislative words their natural meaning.' " *Id.* at 1032 (quoting *Rosenberg v. United States,* 297 A.2d 763, 765 (D.C.1972) (citation omitted)). Moreover, " 'if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them....' " *Luck v. District of Columbia,* 617 A.2d 509, 514 (D.C.1992) (quoting *United States v. Freeman,* 44 U.S. (3 How.) 556, 564–65, 11 L.Ed. 724 (1845) (other citations omitted)). "If statutes conflict, our task is to reconcile them if possible." *Harman v. United States,* 718 A.2d 114, 117 (D.C.1998); *see also Gonzalez v. United States,* 498 A.2d 1172, 1174 (D.C.1985) ("[W]e have a duty to make every effort to reconcile allegedly conflicting statutes and to give effect to the language and intent of both.") (quoting

*District of Columbia v. Smith,* 329 A.2d 128, 130 (D.C.1974)).

■ After examining pertinent provisions of the FBPA, the Home Rule Act and the CMPA, we conclude that the 1987 amendment to the FBPA does not entitle Mr. Brown, a pre–1980 District employee, to interest on a back pay award. Rather, the Home Rule Act and the CMPA guaranteed pre–1980 District employees only those rights to which they were entitled "immediately prior" to 1980, and interest on back pay awards under the FBPA was not one of those rights. The FBPA prior to the 1987 amendment did not authorize interest on back pay awards. Although the 1987 amendment to the FBPA provided for interest on back pay awards, nothing in that amendment even remotely suggests that employees covered by the Act were entitled to such interest before 1980. Indeed, the fact that, under § 623(b)(2)(A) of the continuing appropriations for Fiscal Year 1988, which contained the amendment, employees whose final judgments or decisions were rendered before the effective date of the amendment were obligated to "reserve" a right to interest "contingent on the enactment of a statute authorizing the payment of interest on claims brought under section 5596," confirms that employees had no right to interest on back pay awards under the FBPA before 1980. This position is consistent with *Staats* and *Van Winkle, supra,* which concluded that no interest on back pay awards could be paid under the FBPA unless Congress specifically authorized payment.

■ Read together, pertinent provisions of the Home Rule Act and the CMPA reflect Congressional and District policies that the District's personnel system is to

Canal Zone," although the court apparently did not take that fact into consideration ("Our analysis expressly pretermits any determination of the correctness of the district court's decision to apply state law to the claim under review."). *Id.* at 166. Since there was no statutory provision governing the award of interest under the FBPA when *Payne* was decided, the court applied an abuse of discre-

tion standard and held that "[i]n the absence of a statutory provision, the award of prejudgment interest is in the discretion of the court" and concluded that the court did not abuse its discretion in making the award. *Id. Payne* also recognized that when the Congress created the Panama Canal Company as a corporate entity with the right to sue and be sued, it waived sovereign immunity. *Id.* at 163.

be autonomous and separate from the federal system, and that employees who were hired before 1980 could be given only those concrete entitlements or personnel benefits which were available, and to which they were entitled, before 1980. Congress specifically enacted the Home Rule Act to authorize the District to establish its own personnel system and to supersede federal laws, such as the FBPA. *See AFGE, supra,* 459 A.2d at 1048 (quoting D.C.Code § 1–242(3)) ("[F]ederal personnel legislation was to remain in effect 'until such time as the Council shall, pursuant to this section, provide for coverage under a District government merit system.'"). The CMPA was designed to be a separate, autonomous system controlled by the District. *See* § 1–601.2(a)(1) (purpose of the CMPA is to "[p]rovide for increasingly autonomous control over personnel administration by the District of Columbia government."). With respect to benefits which District employees enjoyed as federal employees, in § 1–242(3) of the Home Rule Act, Congress guaranteed pre–1980 District employees only those "personnel benefits ... *at least equal to* those provided by legislation enacted by Congress ... and applicable to such ... employees *immediately prior to the effective date*" of the CMPA. (Emphasis added.) Similarly, the Council affirmed that pre–1980 employees were "guaranteed rights and benefits *at least equal to those currently applicable* ... under provisions of personnel law ... *in force on the date immediately prior to the ... effective [date of the CMPA]* ...." D.C.Code § 1–602.4(a) (emphasis added). The FBPA interest provision was not in effect before the effective date of the CMPA.

Nothing in the Home Rule Act nor the CMPA mandates the continuing applicability of future federal benefits provided by subsequent amendments to District employees. *See Thomas v. Barry,* 234 U.S.App. D.C. 378, 382 n. 31, 729 F.2d 1469, 1473 n. 31 (1984) (citing § 1–242(3) (1981) and stating that "the [District's] personnel system benefits must be at least equal only to the benefits the incumbent employees had 'immediately prior to the effective date' of the establishment of the District's permanent merit system—*not to the benefits provided to federal employees thereafter.*") (emphasis added). Furthermore, the Council unequivocally specified in § 1–633.2(a)(5)(G) that the FBPA would cease to apply to District employees. Had the Council intended for pre–1980 employees, and those hired after 1980, to receive all benefits conferred by the FBPA after 1980, it would have enacted legislation manifesting that policy. Accordingly, we hold that District employees, including those hired before 1980, are not entitled to interest on back pay awarded under the FBPA.

For the foregoing reasons, we reverse the judgment of the trial court.

*Reversed.*