## REID, SUPERINTENDENT, DISTRICT OF COLUMBIA JAIL, *v.* COVERT.

No. 701.   Argued May 3, 1956.—Decided June 11, 1956.

*Marvin E. Frankel* argued the cause for appellant. With him on the brief were *Solicitor General Soboloff, Assistant Attorney General Olney, Beatrice Rosenberg* and *Richard J. Blanchard.*

*Frederick Bernays Wiener* argued the cause and filed a brief for appellee.

MR. JUSTICE CLARK delivered the opinion of the Court.

Mrs. Clarice Covert was convicted and sentenced to life imprisonment by a military court-martial which tried her at a United States Air Force base in England for the murder of her husband, an Air Force sergeant. She was brought to the United States and confined in the Federal Reformatory for Women, Alderson, West Virginia. On appeal, the United States Court of Military Appeals set aside her conviction on grounds not material here, and she was transferred to the District of Columbia jail to await a rehearing by court-martial at Bolling Air Force Base, Washington, D. C. While there she filed a petition for a writ of habeas corpus in the United States District Court for the District of Columbia, alleging that she was not subject to court-martial jurisdiction because Article 2 (11) of the Uniform Code of Military Justice, 50 U. S. C. § 552, was unconstitutional. The District Court ordered the writ to issue, and the Government appealed directly to this Court. Postponing the question of jurisdiction until a hearing on the merits, 350 U. S. 985, we scheduled this case for argument with *Kinsella* v. *Krueger, ante,* p. 470, decided this day.

At the outset, appellee questions the jurisdiction of this Court to hear the case on direct appeal from the District Court. For reasons hereafter stated, we conclude that we have jurisdiction.

Appellee's principal argument on the merits is answered by our decision in *Kinsella* v. *Krueger, ante,* p. 470. It is also contended, however, that whatever jurisdiction the military may have had to try Mrs. Covert by court-martial under Article 2 (11) was lost by her return to the United States and delivery to the custody of civilian authorities. We conclude that in the circumstances of this case this argument is without merit.

## I.

The question of our jurisdiction involves an interpretation of 28 U. S. C. § 1252:

"Any party may appeal to the Supreme Court from an interlocutory or final judgment, decree or order of any court of the United States . . . holding an Act of Congress unconstitutional in any civil action, suit, or proceeding to which the United States or any of its agencies, or any officer or employee thereof, as such officer or employee, is a party."

It is conceded that, in issuing the writ of habeas corpus, the District Court held an Act of Congress unconstitutional. Appellee's sole contention is that appellant, the Superintendent of the District of Columbia jail, does not come within the requirement of § 1252 that "the United States, or any of its agencies, or any officer or employee thereof, as such officer or employee," be a party.

The Superintendent is responsible to the Director of the Department of Corrections of the District of Columbia, who in turn is selected by the Board of Commissioners of the District. Reorganization Order No. 34, D. C. Code, 1951, App. to Title 1, Supp. III, p. 34. The Commissioners are appointed by the President and are officers of the United States under Art. II, § 2, of the Constitution. The Superintendent has a statutory duty to "receive and keep in the Washington Asylum and Jail all prisoners committed thereto for offenses against the United States." D. C. Code, 1951, § 24–410. Mrs. Covert was placed in the District jail on orders of the Air Force, because there are no accommodations for women prisoners at Bolling Air Force Base, where the rehearing of her trial by court-martial is scheduled.

It has long been settled that an officer, while holding prisoners for the United States, is the "keeper of the

United States," *Randolph* v. *Donaldson,* 9 Cranch 76, 86, and, as such, is an officer of the United States. Since appellant was required to "receive and keep" prisoners of the United States, he is, to that extent, an officer of the United States. It is not necessary to say, and we do not say, that the District of Columbia in these circumstances is an "agency" of the United States. For, whether the Government should maintain its own jail in the District of Columbia, or utilize the local facilities, is simply a matter of administrative convenience, and it would do violence to the purpose of Congress to provide a "prompt review of the constitutionality of federal acts," *Fleming* v. *Rhodes,* 331 U. S. 100, 104, to interpret § 1252 restrictively. For all practical purposes, the District of Columbia jail is, in this case, the "jail of the United States," *Randolph* v. *Donaldson, supra,* and the Superintendent is its keeper. As the custodian of Mrs. Covert, a federal prisoner, appellant is an officer or employee of the United States for purposes of § 1252.

## II.

On the merits, Mrs. Covert contends that Article 2 (11) should be restricted geographically, and therefore military jurisdiction over her expired upon her return to the United States. She also contends that, as a civilian, she is no longer subject to the Code, since she is not in "custody of the armed forces" under Article 2 (7).

An entirely different case might be presented if Mrs. Covert had terminated her status as a person "accompanying the armed forces without the continental limits of the United States" by returning to this country voluntarily. But that is not this case. The issue here is whether we should create an exception to the general rule that jurisdiction of a tribunal, once acquired, continues until final disposition. At the time of her court-

martial in England, Mrs. Covert was subject to military jurisdiction under Article 2 (11), *Kinsella* v. *Krueger, ante,* p. 470. Her transfer under orders of the Air Force was in furtherance of that jurisdiction. To accept Mrs. Covert's argument would result in the anomalous situation that military jurisdiction, validly exercised under Article 2 (11), would be defeated by the imposition of a sentence under Article 58, 50 U. S. C. § 639, which provides for confinement "in any penal or correctional institution under the control of the United States, or which the United States may be allowed to use." It would be unreasonable to hold that the services retained jurisdiction of military prisoners that they kept in foreign countries but lost jurisdiction of prisoners confined in penal institutions in the United States.

Nor is jurisdiction defeated by reversal of Mrs. Covert's conviction and the ordering of a rehearing. The military courts have recognized rehearings to be but continuations of the original proceedings, *United States* v. *Padilla,* 5 C. M. R. 31, 42; *United States* v. *Moore,* 5 C. M. R. 438, 444; *United States* v. *Milbourne,* 15 C. M. R. 527, 528; and the legislative history of Article 63 of the Code bears out the fact that they were so intended by Congress. H. R. Rep. No. 491, 81st Cong., 1st Sess. 30; S. Rep. No. 486, 81st Cong., 1st Sess. 27.

We also note that this case is clearly distinguishable from *Toth* v. *Quarles,* 350 U. S. 11. Toth had returned to the United States and been honorably discharged months before the specifications were filed charging him with an offense committed while a soldier in Korea. The Air Force had relinquished all jurisdiction over Toth before any charge was filed against him. But here, Mrs. Covert was charged, tried, convicted, sentenced and imprisoned pursuant to a valid exercise of court-martial jurisdiction while she was concededly within the

provisions of Article 2 (11). We are not deciding here when, in other circumstances, Article 2 (11) jurisdiction may terminate. In this case we hold only that military jurisdiction, once validly attached, continues until final disposition of the case.

*Reversed.*

[For reservation of MR. JUSTICE FRANKFURTER, see *ante,* p. 481.]

[For dissent of MR. CHIEF JUSTICE WARREN, MR. JUSTICE BLACK, and MR. JUSTICE DOUGLAS, see *ante,* p. 485.]