BARWOOD, INC., et al., Appellees,

v.

DISTRICT OF COLUMBIA,
et al., Appellants.

No. 99–7027.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 5, 1999.

Decided Feb. 4, 2000.

Donna M. Murasky, Assistant Corporation Counsel, Office of the Corporation Counsel, argued the cause for appellants. With her on the briefs were Robert R. Rigsby, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel.

Stephen W. Grafman argued the cause for appellees. With him on the brief was A. Thomas Morris. John Marshall entered an appearance.

Before: WILLIAMS, GINSBURG and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

On June 12, 1998 the District of Columbia Taxicab Commission promulgated 31 D.C.M.R. § 828, restricting the circumstances under which suburban taxicabs may pick up passengers in the District and subjecting violators to criminal sanctions. Plaintiffs, various suburban taxicab companies and some of their drivers, sought a temporary restraining order ("TRO") against the Commission and various individual defendants, to prevent them from enforcing § 828. They argued that the Commission lacked the authority to alter the existing reciprocity arrangements, and that reciprocity infractions are subject only to civil sanctions. On July 31, 1998 the district court entered a TRO, which was later expanded in response to allegations that it had been violated. On February 16, 1999 the district court entered a preliminary injunction prohibiting the Commission from enforcing § 828, from imposing any criminal sanctions for reciprocity violations, or from otherwise altering the preexisting reciprocity arrangements. *Barwood, Inc. v. District of Columbia,* No. 98–1901 (D.D.C. Feb. 16, 1999). The District appealed.

Plaintiffs pursued this injunction—and so far as appears the entire lawsuit—almost exclusively on the basis of violations of District of Columbia law. The original complaint asserted diversity jurisdiction. See 28 U.S.C. § 1332(a). Later that same day, presumably upon realizing that the District of Columbia, like a state, is not a citizen of a state (or of itself) for diversity purposes, see *Long v. District of Columbia,* 820 F.2d 409, 414 (D.C.Cir.1987), plaintiffs filed an amended complaint attempting to establish federal question jurisdiction. To this end they added claims that defendants' conduct had violated "the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983."

Because there are no allegations of federal constitutional violations independent of the purported violations of District of Columbia law (or at any rate no such allegations for which plaintiffs have standing), there is no subject matter jurisdiction. Accordingly, we vacate the preliminary injunction and remand for the district court to dismiss the complaint.

\*    \*    \*

The District law claims around which this suit has revolved are somewhat complex but can be generalized as assertions that various agencies and individuals of the District's executive branch acted ultra vires. In the District of Columbia Taxicab Commission Establishment Act of 1985 (the "Taxicab Act" or the "Act"), D.C.Code § 40–1701 *et seq.*, the District created the District of Columbia Taxicab Commission ("D.C.T.C." or the "Commission"), and gave it "exclusive authority for intrastate regulation of the taxicab industry." *Id.* § 40–1704. The Act did not address the issue of taxicab reciprocity (i.e., the arrangements under which suburban taxicabs may operate within the District, and vice versa), but provided the Commission with the authority to "[a]dvise the Mayor regarding the entering, modifying, and terminating of reciprocal agreements respecting taxicabs with governmental bodies in the Washington metropolitan area." *Id.* § 40–1707(b)(1)(L). On August 13, 1987 the Commission's chairman issued "Administrative Order No. 4," which purported to govern the provision of taxicab service in the District by cabs licensed only in other jurisdictions.

On June 12, 1998 the District of Columbia Taxicab Commission promulgated a new provision to the District of Columbia Municipal Regulations, 31 D.C.M.R. § 828, limiting the scope of taxicab reciprocity with neighboring jurisdictions. The regulation provided penalties in the form of fines of up to $300 and imprisonment of up to 90 days.

Plaintiffs, suburban taxicab drivers and their companies, filed a complaint in the district court. They named as defendants the District, the District Chief of Police, and the Taxicab Commissioners. The complaint—and all successive amended complaints—specified that the various individual defendants were sued "in their official capacities." The complaint alleged that only the Mayor, not the Commission, possessed the exclusive authority "to change, modify or alter applicable reciprocity arrangements in the District of Columbia," Joint Appendix 186, and that the provision of civil penalties by the Taxicab Act, D.C.Code § 40–1719(a), was exclusive, negating the purported penalties under § 828.

In response to a TRO issued by the district court, the chairman of the D.C.T.C. issued an order rescinding Administrative Order No. 4—the 1987 internal agency memorandum setting forth the District's policy of reciprocity. Further, the Mayor delegated to the Commission his authority to alter reciprocity agreements. Soon thereafter the Commission rescinded existing § 828 and, under the Mayor's delegation, approved an identical rule as an "emergency" § 828.

Plaintiffs filed a contempt motion, arguing that the Commission's action violated the TRO. They also alleged that Harry Silverman, a Commissioner of the D.C.T.C., should be found in criminal contempt for deliberately running his car into a taxicab owned by one of the plaintiffs in an attempt to arrest the driver pursuant to § 828. Plaintiffs filed a Second Amended Complaint, expanding their claims to encompass the alleged infractions by the Commission and by Silverman. The district court followed up with TROs broader than the initial one, and on February 16, 1999 issued the preliminary injunction now on appeal. It enjoined the defendants from: "(1) enforcing 31 D.C.M.R. § 828, or any portion thereof; and (2) taking any action to effectuate any arrests or other criminal penal actions against taxicab drivers in connection with alleged reciprocity violations." In addition, the D.C.T.C. was enjoined from: "(1) taking any action … in reliance upon any purported mayoral delegation regarding reciprocity; and (2) seeking to enact, modify, or repeal any regulations, administrative orders, or other administrative actions that have the effect of limiting, modifying, repealing, or otherwise altering reciprocity."

\* \* \*

We may dispense rapidly with jurisdictional theories advanced in or before oral argument. Plaintiffs say that if their District law theory is correct, the District lacks the authority to arrest taxicab drivers for reciprocity violations; thus any arrest is illegal and in violation of the Fourth Amendment. The argument has an initial plausibility: if an arrest without probable cause violates the Fourth Amendment, then surely one for which no cause *could* possibly exist must do so. If correct, of course, the argument would transform a wide class of state law claims into federal ones. Every arrest claimed to violate state law would entail an ancillary federal claim, even though the state law attack rested (as here) on state law theories having no connection whatever with the policies underlying the Fourth Amendment.

Cases such as *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), and *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), both cited by plaintiffs, allow anticipatory relief against threatened state law enforcement; but these cases turned on that enforcement's deterrent threat to plaintiffs' constitutional, in particular First Amendment, rights. (In *Dombrowski*, moreover, enforcement was alleged to be in bad faith, "only to discourage appellants' civil rights activities." 380 U.S. at 490, 85 S.Ct. 1116.) Here plaintiffs make no parallel allegation that the District's arguably ultra vires taxicab regulations burden or chill any independent federal constitutional rights. Mere inconsistency with state, or even federal, law will not suffice to create a Fourth Amendment cause of action (unless, of course, the inconsistency is with the Fourth Amendment itself).

Plaintiffs also argue that any arrest under the disputed provisions will be a violation of the Fifth and Fourteenth Amendments, apparently asserting a due process theory. Again this is a state law claim in federal garb. But "the fact of a state law violation does not resolve whether a plaintiff has been deprived of due process." *Committee of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 944 (D.C.Cir.1988); see also *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc) ("A state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules."). A due process claim rests on "the manner in which the violation occurs as well as its consequences." *Committee of U.S. Citizens*, 859 F.2d at 944; see also *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government."); *United States ex rel. Hoover v. Franzen*, 669 F.2d 433, 446 n. 28 (7th Cir.1982) ("In order for the violation of state law to rise to the level of a federal constitutional violation, it must be alleged that the violation was the result of arbitrary state action."). But plaintiffs point to nothing in the record that would support a claim that the Commission acted arbitrarily or in a manner otherwise violative of due process, except to argue that the regulation violates state law. That is not enough.

Similarly, it is not enough that in their amended complaints plaintiffs ask that the Commission should be held in civil contempt for violating the district court's TRO. To secure jurisdiction by this means would be a remarkable feat of bootstrapping. But just as a court without jurisdiction over an underlying case has no jurisdiction to issue a subpoena (unless issued in aid of determining jurisdiction), or to enforce it by civil contempt, *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988); cf. *Barry v. United States*, 865 F.2d 1317, 1322 (D.C.Cir.1989) (finding that there is no such thing as a cause of action for civil contempt, a device used simply to secure compliance with a court order), so too a

court without jurisdiction over an underlying case cannot issue a TRO, or enforce it by civil contempt.

The possibility that the U.S. Attorney may pursue a *criminal* contempt claim against Silverman or other defendants, see *United States Catholic Conference,* 487 U.S. at 78–79, 108 S.Ct. 2268, of course, neither provides plaintiffs with a cause of action nor supplies jurisdiction for their civil suit.

In a supplemental brief filed after oral argument, the plaintiffs have sought to turn their allegations against Commissioner Silverman into an independent federal claim, and then, in a marvelous twist, to suggest that jurisdiction over the other claims might survive as supplementary claims under 28 U.S.C. § 1367. This will not work.

■ Plaintiffs say that Silverman's conduct independently created a federal cause of action. The Second Amended Complaint alleges that he "intentionally collided his vehicle into a taxicab" of one of the plaintiff companies, that the intentional collision represented a battery, that Silverman acted under color of state law, and thereby violated the court's TRO, and that therefore he should be held in criminal contempt. Second Amended Complaint, ¶¶ 31–35. The complaint goes on to say that Silverman's conduct placed the plaintiff cab company "in jeopardy of unreasonable government action, ... in violation of the Fourth, Fifth, and Fourteenth Amendments ... and 42 U.S.C. § 1983." *Id.* ¶ 47.

We will assume for these purposes that Silverman was acting under color of state law,[1] and that absent unusual circumstances the deliberate use of a car to ram another, to enforce a cab regulation, violates the federal constitution as an unreasonable use of force. But recall that the plaintiffs' suit is only against the District,

the individuals being named only in their official capacity. Indeed, when the plaintiffs sought contempt proceedings against Silverman, the district court noted "that Defendants do not represent Mr. Silverman, and that Mr. Silverman has never appeared in any of these proceedings." Memorandum Opinion, Oct. 30, 1998, at 6 n.3.

■ Insofar as plaintiffs seek injunctive relief against further use of cars as battering rams by the District, they have failed even remotely to allege facts essential for standing; there is no assertion of any fact giving reason to believe that Silverman or any other District officer or employee will again use this innovative law enforcement technique against any of the plaintiffs' cabs. *City of Los Angeles v. Lyons,* 461 U.S. 95, 110, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (finding that plaintiff who did not "face[ ] a real and immediate threat of again being illegally choked" pursuant to the city's policy with respect to the use of chokeholds did not have standing to bring a claim for injunctive relief against the city).

■ Although plaintiffs also seek damages, they have never alleged that the District has adopted a "policy or custom" of enforcing its taxi regulations by means of crashing autos into each other, as would be required for municipal liability under § 1983. *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). While of course an omission in substantive allegations is not inherently a jurisdictional defect, here the question is whether plaintiffs' references to the alleged Silverman episode ever purported to invoke federal question jurisdiction. In fact those references are most naturally understood exclusively as the bases for plaintiffs' requests for criminal contempt remedies, see Second Amended Complaint at ¶¶ 31–35, and

---

1. The District, however, cites D.C.Code Ann. § 40–1722 (1998) for the proposition that the D.C. Council has transferred all taxicab enforcement responsibilities to the Metropolitan Police Department.

for their jurisdictionally defective request for injunctive relief (*id.* ¶ 47). Under the most reasonable reading, the allegation against Commissioner Silverman does not form a basis for plaintiffs' claim for damages, and accordingly the successive complaints altogether fail to allege a federal claim.

█ Of course the alleged ramming may in fact afford the specific cab company and driver a good § 1983 claim against Silverman. They are at liberty to try such a suit. If, however, they should seek to combine that claim with ones dependent on the District law issues which have hitherto consumed the time of the district court, invoking as they have here at the last minute the "supplemental jurisdiction" provision of 28 U.S.C. § 1367, allowance of such supplemental jurisdiction would either be improper for want of a "common nucleus of operative fact," *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); see also *Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C.Cir.1996), or be an abuse of discretion given that the District law issues so clearly "substantially predominate[ ] over the claim or claims over which the district court has original jurisdiction," 28 U.S.C. § 1367(c)(2).

The preliminary injunction is vacated and the case remanded for the district court to dismiss the complaint.

*So ordered.*