Allan E. LUCAS, Jr., et al., Appellant,

v.

UNITED STATES Government,
et al., Appellees.

Nos. 00–5149, 00–5191.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 5, 2001.

Decided Oct. 30, 2001.

Donna Beasley argued the cause for appellant. With her on the brief was Karl W. Carter, Jr.

Mary T. Connelly, Assistant Corporation Counsel, argued the cause for appellees. With her on the brief were Robert R. Rigsby, Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, Kenneth L. Wainstein, U.S. Attorney, R. Craig Lawrence and Michael J. Ryan, Assistant U.S. Attorneys. Alexander D. Shoaibi, Assistant U.S. Attorney, entered an appearance.

Before: RANDOLPH, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

In this appeal, employees of the District of Columbia Department of Corrections claim federal competitive status for the purpose of retirement benefits and "entitlement" to federal employment. They sued the District of Columbia and the United States under 42 U.S.C. § 1983, the Due Process Clause of the Fifth Amendment to the United States Constitution, and District of Columbia law, to enforce their claimed federal status in connection with the closing of the Lorton Reformatory, and to compel the United States and the District of Columbia to follow correct procedures for reductions-in-force ("RIFs"). In appealing, appellants contend that the district court erred in dismissing their claim to federal employment status under Fed.R.Civ.P. 12(b)(6), and in disposing of their other claims for failure to exhaust, requiring them to pursue their remedies under District of Columbia personnel procedures. We find no error, and accordingly we affirm the dismissal of the complaint.[1] By separate order we remand the order imposing monetary sanctions on plaintiffs' counsel for entry of a final judgment and clarification, by name, of the counsel against whom the sanctions are entered.

---

1. In light of appellants' constitutional claim, it appears that the district court determined, in its discretion, to exercise supplemental jurisdiction over appellants' claims under District of Columbia law. *See* 28 U.S.C. § 1367. Neither the United States nor the District of Columbia challenge the district court's assertion of supplemental jurisdiction. We note that the court has treated the Home Rule Act as a hybrid statute, not solely applicable to the District of Columbia inasmuch as it affects various federal employees and the structure of some federal agencies. *See Thomas v. Barry,* 729 F.2d 1469, 1471 (D.C.Cir.1984); 28 U.S.C. § 1366. We need not decide whether this alternative jurisdictional ground applies.

## I.

The status of employees of the District of Columbia government has changed over the years as Congress has changed the nature of the local government. Throughout at least a part of its existence, the District government has had a correctional facility, and at least prior to the establishment of the Mayor–Commissioner form of government under Reorganization Plan No. 3 of 1967, *see* 32 F.R. 11669, 81 Stat. 948, Sec. 301 (1967), some employees of the District government were treated as federal officers for certain purposes. *See, e.g., Reid v. Covert,* 351 U.S. 487, 489–90, 76 S.Ct. 880, 100 L.Ed. 1352 (1956), *rev'd on other grounds* 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957); *Zinkhan v. District of Columbia,* 271 F. 542, 544–45 (D.C.Cir.1921). Whatever their previous status may have been, the question posed by appellant Corrections Department employees requires the court to address their status upon enactment of the D.C. Self Government and Governmental Reorganization Act of 1973 ("Home Rule Act"), Pub.L. 93–198, 87 Stat. 774 (codified at D.C.Code §§ 1–201.01, *et seq.* (2001)). If appellants were District government employees at the time of enactment, then they are subject to the provisions of the D.C. Comprehensive Merit Personnel Act, D.C.Code § 1–602.01 (2001) ("Merit Act"), unless they can point to authority preserving their claimed federal competitive status.

Prior to enactment of the Home Rule Act, Congress established a commission to study the District government. *See* Act of Sept. 22, 1970, Pub.L. No. 91–405, 84 Stat. 845. The Commission was referred to as both the "Little Hoover Commission," because it was modeled on the congressional commissions in the 1940s and 1950s that recommended improvements in the organization and management of the federal government, *see* Report of the Nelsen Commission, H.R. Doc. No. 92–317, vol. II, at xv (1972), and the "Nelsen Commission," after its chairman, the Honorable Ancher Nelsen. As part of its Report to Congress in 1972, the Commission examined the multiple personnel systems for District government employees and called for a comprehensive District-government-wide merit personnel system "geared to municipal needs." Report of the Nelsen Commission, H.R. Doc. No. 92–317, vol. II, at 178 (1972). It recommended that "[t]he District personnel system should be restructured along the lines of municipal rather than Federal Systems...." *Id.* vol. II, at 550; *see also id.* vol. II, at 177–78. The Commission included in its Report a draft personnel bill, which proposed that "[e]mployees of the District who are serving with Federal competitive status shall be granted permanent status in the [new District-government-wide] Career Service...." *Id.* vol. III, at 275.

The following year Congress enacted the Home Rule Act. *See* D.C.Code, History of the D.C.Code, vol. 1 (2001) at 173 (The D.C. Self–Government and Governmental Reorganization Act as enacted December 23, 1973). As relevant here, § 422(3) of the Home Rule Act provided that the Mayor would administer the personnel functions for District government departments and agencies, and that personnel legislation enacted by Congress applicable to District government employees would continue in force only until the Council of the District of Columbia enacted a District government merit system. *See* D.C.Code § 1–204.22(3) (2001). On October 31, 1978, the D.C. Council adopted the D.C. Comprehensive Merit Personnel Act, codified at D.C.Code §§ 1–601.01, *et seq.* (2001), ("Merit Act"), which became effective on March 3, 1979. *See Am. Fed'n of Gov't Employees v. Barry,* 459 A.2d 1045, 1048–49 (D.C.1983). Stating among its purposes the desire to "[c]reate uniform systems for personnel administration among the execu-

tive departments and agencies reporting directly to the Mayor," D.C.Code § 1–601.02(a)(2), the Merit Act adopted the general approach recommended by the Nelsen Commission. *See* Nelsen Commission Report, vol. II, at 178, 553.

The Merit Act established a municipal personnel system quite apart from that of the federal government, with Career, Executive, and Excepted Services for "employees" performing "a function of the District government." D.C.Code §§ 1–603.01(3), –603.01(7), –608.01, –609.01, –610.51. With exceptions inapplicable here, *see* D.C.Code § 1–602.01(a), persons employed by the District government would, as of January 1, 1980, "automatically transfer into the appropriate personnel system established [by the Merit Act]." *Id.* at § 1–602.04(c). At that time, personnel procedures, including a right to review by the D.C. Office of Employee Appeals, would become available to District government employees. *See id.* at § 1–606.01. In order to ensure continuity in retirement benefits, the Merit Act provided that such employees first employed before October 1, 1987, would continue to participate in the United States Civil Service Retirement System, *see id.* at § 1–626.02; for employees hired on or after that date, District retirement benefits would apply. *See id.* at § 1–626.03.

This background is reflected in the court's decision in *Thomas v. Barry,* 729 F.2d 1469 (D.C.Cir.1984). In that case, the court held that former United States Department of Labor employees whose functions were transferred to the District government as part of the governmental reorganization in the Home Rule Act ceased to be federal employees with attendant federal employee rights and benefits once the Merit Act took effect. *See id.* at 1473. The employees, who had been career employees in the federal competitive service, and retained their federal civil service rights prior to enactment of the Merit Act, claimed that they were entitled to receive the same pay increases as federal government employees. *See id.* at 1470–71. For their claim to continued status as federal competitive service employees, they relied on two provisions of the Home Rule Act: § 204(g), *see* D.C.Code § 1–202.04, which provided that federal employees transferred to the District government retained their competitive service rights, and § 713(d), *see* D.C.Code § 1–207.13, which provided that such transfers would not deprive the transferred employees of the civil service rights they held prior to transfer. *See Thomas,* 729 F.2d at 1472. The court rejected the notion that the absence in the Home Rule Act of an express time limit on these civil service rights was to be read as a continuing grant of federal benefits. *See id.* at 1473. Rather, the court concluded that the legislative history of the Home Rule Act made clear that the transferred employees' federal civil service rights were "merely interim rights" that ceased to apply to the transferred employees upon enactment of the Merit Act. *See id.* To hold otherwise would "frustrate[ ] the congressional purpose of creating a single, autonomous personnel system." *Id.* at 1474. Because appellants, who do not claim to have ever been employees of the federal government, have a lesser claim to federal benefits, *Thomas* would appear to be dispositive of their claims to federal status.

## II.

Appellants seek to distinguish themselves from the employees in *Thomas* and other District government employees by virtue of their claim that they perform federal duties (and thereby retain their federal status) because some federal prisoners are committed to District of Columbia prisons. They point to case law and various provisions of the Home Rule Act. Neither source of authority supports their

claims, however, and *Thomas* controls, thereby resolving appellants' other contentions as well.

■ Appellants rely on *Reid v. Covert*, 351 U.S. 487, 76 S.Ct. 880, 100 L.Ed. 1352, where the Superintendent of the D.C. Jail sought to appeal the issuance of a writ of habeas corpus. The Supreme Court held that insofar as the Superintendent of the D.C. Jail was custodian of a federal prisoner, he was an "officer or employee of the United States" for purposes of meeting the requirement of 28 U.S.C. § 1252 that the United States be a party to an appeal involving a decision that an Act of Congress was unconstitutional. *See Reid*, 351 U.S. at 489–90, 76 S.Ct. 880. Appellants also rely on *Zinkhan* where this court held that the Superintendent of the Washington Asylum and Jail could not be held liable for damages for false imprisonment based on the acts of his subordinates over whom he had no power of appointment or discharge. *See Zinkhan*, 271 F. at 545. Both cases, however, concern pre-Home Rule Act District government employees. Consequently, as *Thomas* makes clear, they provide no support for appellants' claim to federal competitive status after enactment of the Merit Act. *See Thomas*, 729 F.2d at 1473. The Merit Act identified the Department of Corrections as an agency under the direct administrative control of the Mayor, *see* D.C.Code § 1–603.01(17)(E), and also identified employees of the Corrections Department as among those employees who, if first hired after September 30, 1987, would be covered by the District's retirement benefits. *See id.* at §§ 1–626.03, –626.04(2)(B). Appellants' attempt to distinguish themselves from other District government employees thus fails to overcome both Congress' direction that there be a comprehensive merit personnel system for District government employees, *see Thomas*, 729 F.2d at 1473, and the Merit Act's express provisions covering Corrections Department employees. The basis for their claim to continued federal competitive status, namely, their detention of federal prisoners, was rejected implicitly when Congress directed the new District government to enact an autonomous merit personnel act, and explicitly in the Merit Act itself, which treated them as District government employees.

■ Appellants' reliance on other provisions of the Home Rule Act is no more availing. First, they contend that the Home Rule Act provision barring the D.C. Council from amending Title 24 of the D.C.Code for four years trumps applicability of the Merit Act to Corrections Department employees. Section 602(a)(9) provided that the D.C. Council would have no authority to

> enact any act, resolution, or rule with respect to any provision of Title 23 [of the District of Columbia code] (relating to criminal procedure), or with respect to any provision of any law codified in Title 22 or 24 (relating to crimes and treatment of prisoners) ... during the twenty-four full calendar months immediately following the day on which members of the Council first elected pursuant to this Act take office.

D.C.Code Ann. § 1–233(a)(9) (1999 Repl.). This section was amended in 1976 to extend Congress' exclusive jurisdiction over the District's criminal laws from twenty-four to forty-eight months. *See* Pub.L. No. 94–402, 90 Stat. 1220, (1976) (codified as amended at D.C.Code Ann. § 1–233(a)(9) (1999 Repl.)). Appellants point in particular to § 411, *see* D.C.Code Ann. § 24–411 (1999 Repl.), which they describe in their brief as providing that Corrections Department employees are under the general direction of the Mayor–Commissioner, an interim post during implementation of District "home rule." But this gets them nowhere. At the time Congress enacted the Home Rule Act, § 411 provided only

that employees at Lorton, Occoquan and the D.C. Jail would be subject to the supervision of the D.C. Corrections Department, with the Superintendent to be appointed by the then Mayor–Commissioner. *See* D.C.Code Ann. § 24–411 (1999 Repl.). In any event, the express language that Congress used to describe the four-year bar was limited to criminal laws and criminal procedure, and was designed to carry out Congress' purposes to await the recommendations on the criminal code from the D.C. Law Revision Commission. *See McIntosh v. Washington,* 395 A.2d 744, 751 (D.C.1978). Because Congress' purpose in retaining exclusive jurisdiction for four years on amendments to provisions of Title 24 has nothing to do with employee personnel rights or benefits, appellants again fail to show that their personnel and retirement rights are distinguishable from those of employees subject to the Merit Act. Although the Merit Act included provisions for separate personnel systems for some District employees, such as judges and teachers, *see* D.C.Code § 1–602.01, no similar exception was provided for Corrections Department employees.

■ Second, appellants' reliance on the provision of the Home Rule Act that provides for work-sharing agreements with the United States, *see* D.C.Code § 1–207.31 (2001), likewise provides no support for their claim of continued federal status. That provision neither states nor implies that District government employees who provide services to the United States government have federal personnel and retirement rights. To do so would be contrary to Congress' intention to have an autonomous personnel system for District government employees. *Cf. Thomas,* 729 F.2d at 1474.

For similar reasons, appellants' reliance on federal regulations applying to federal government employees, *see* 5 C.F.R. §§ 210.102(b), 211.102(b) and (c), 315.401–402, is misplaced; they are not employees of the federal government. Lucas' claim that he receives retirement benefits from the U.S. Civil Service retirement system as a result of his employment with the D.C. Metropolitan Police Department from 1972–73 would not make him any different from District employees who were hired prior to 1987. *See* D.C.Code §§ 1–204.22(3),–626.02, –626.03; *Am. Fed'n of Gov't Employees,* 459 A.2d at 1051. Nor can appellants find support for their claim in the Merit Act itself, for the Corrections Department is not a grant-in-aid program under D.C.Code § 1–632.07(d), but is an agency of the District government funded by annual appropriations by Congress. *See* D.C.Code §§ 1–201.03,–626.04(2)(B).

Having failed to show that either Congress or the Merit Act intended to treat Corrections Department employees differently from other District government employees, appellants' substantive claims based on their claimed federal competitive status fail for the reasons stated in *Thomas.* It follows that their constitutional claim, based on an alleged property right to federal competitive status, is meritless. *See Bd. of Regents v. Roth,* 408 U.S. 564, 576–77, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Am. Fed'n of Gov't Employees,* 459 A.2d at 1049. Therefore, because appellants cannot avoid exhaustion requirements by raising garden-variety work-related grievances as statutory and constitutional claims, *see Barwood, Inc. v. District of Columbia,* 202 F.3d 290, 294 (D.C.Cir.2000), they must exhaust their administrative remedies under the Merit Act before filing suit in court. *See* D.C.Code §§ 1–606.03,–624.04; *Washington Teachers' Union Local 6 v. Bd. of Educ. of D.C.,* 109 F.3d 774, 782 (D.C.Cir. 1997); *Robinson v. District of Columbia,* 748 A.2d 409, 411 (D.C.2000). Contrary to appellants' claim, exhaustion is not impossible. They have established no right to federal employment status, and thus

have no claim against the United States. Further, District of Columbia regulations permit intervention by non-parties before the Office of Employee Appeals. *See* 6 D.C.M.R. § 614.1, 46 D.C.Reg. 9306–07 (1999). Appellants' reliance on *Anjuwan v. District of Columbia Dep't of Public Works*, 729 A.2d 883 (D.C.1998), and *Bridges v. Kelly*, 84 F.3d 470 (D.C.Cir. 1996), is misplaced as neither case excuses exhaustion here. Even if these claims were exhausted, however, it is unclear how there would be federal subject matter jurisdiction. Finally, appellants' claim that their collective bargaining agreement expired in 1997, before the RIFs occurred, was not raised in the district court and thus is not properly before the court. *See Yee v. City of Escondido*, 503 U.S. 519, 533–38, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992); *Nat'l Fed'n of Fed. Employees v. Greenberg*, 983 F.2d 286, 288 (D.C.Cir.1993).

Accordingly, we affirm the district court's dismissal of appellants' amended complaint for lack of jurisdiction.