**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Jesse MARTINEZ–GONZALEZ, Defendant—Appellant.**

**United States of America, Plaintiff—Appellee,**

v.

**Miguel Benitez–Ruiz, Defendant—Appellant.**

**United States of America, Plaintiff—Appellee,**

v.

**Osman Alejandro Mencia–Morales, Defendant—Appellant.**

**Nos. 01–30459, 01–30460, 02–30178. D.C. Nos. CR–00–00330–21–TSZ, CR–00–00330–TSZ, CR–00–00330–Z–27.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 7, 2003.

Decided Feb. 26, 2003.

Before WALLACE, TROTT and TASHIMA, Circuit Judges.

MEMORANDUM *

Jesse Martinez–Gonzalez ("Martinez–Gonzalez"), Miguel Benitez–Ruiz ("Ruiz"), and Osman Alejandro Mencia–Morales ("Mencia–Morales") were charged with various crimes related to a heroin and methamphetamine distribution operation. Martinez–Gonzalez and Ruiz were convicted by juries on all charges; each appeals his convictions. Mencia–Morales appeals the sentence imposed after he pled guilty. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**DISCUSSION**

**I Martinez–Gonzalez**

Martinez–Gonzalez argues that the Government presented insufficient evidence to support his convictions for one count of conspiracy to distribute heroin and two counts of possession with intent to distribute. We review sufficiency of the evidence

* This disposition is not appropriate for publication and may not be cited to or by the courts

claims to determine whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Booth,* 309 F.3d 566, 574 n. 5 (9th Cir.2002) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)). "The issue of whether a single conspiracy has been proved is a question of sufficiency of the evidence." *United States v. Duran,* 189 F.3d 1071, 1078 (9th Cir.1999).

**A. Conspiracy Conviction**

■ Martinez–Gonzalez claims that there was insufficient evidence to support his conspiracy conviction because the Government charged a single conspiracy, "but the evidence at trial established two conspiracies." A single conspiracy can be demonstrated by evidence showing that "each defendant knew, or had reason to know, . . . that his benefits were probably dependent upon the success of the entire operation." *Duran,* 189 F.3d at 1080 (citation and internal quotation marks omitted). "Typically, the inference of an overall agreement is drawn from proof of a single objective . . . or from proof that the key participants and the method of operation remained constant throughout the conspiracy." *Id.* (internal citations omitted).

Here, the key conspirators remained constant. A member of the conspiracy, Jose Lepe ("Lepe"), testified at trial that brothers Ramon Nava–Banuelos, Gonzalo Banuelos–Hernandez ("Gonzalo"), and Filemon Nava–Banuelos made their living selling drugs, as did their children Ramon Nava–Vargas ("Tomate"), Joel Nava–Vargas ("Joel"), and David Nava ("Nava"). Nava testified that he purchased heroin

of this circuit except as provided by Ninth Circuit Rule 36–3.

from Modesto Vargas in Apatzingan, Mexico, and that everyone in his family knew Vargas. Nava explained that the various members of his family distributed heroin on their own so he could not answer the question of "who was in charge." However, Nava testified also that he sold heroin to his father's customers and that when Tomate was out of heroin they "had agreed that [Nava] would lend him some, and ... agreed that if [Nava] were ever out that [Tomate] would give [Nava] some." Tomate and Nava benefitted from each other's activities, as did Martinez–Gonzalez, who purchased heroin from both Tomate and Nava. After viewing this evidence in the light most favorable to the Government, we conclude the Government demonstrated that only one conspiracy existed.

■ Martinez–Gonzalez argues that even if one conspiracy existed, he was not a party to that conspiracy. A "slight connection" is sufficient to connect Martinez–Gonzalez to the conspiracy. *United States v. Vaughn*, 797 F.2d 1485, 1492 (9th Cir. 1986). "The term 'slight connection' means that [Martinez–Gonzalez] need not have known all the conspirators, participated in the conspiracy from its beginning, participated in all its enterprises, or known all its details." *United States v. Herrera–Gonzalez*, 263 F.3d 1092, 1095 (9th Cir. 2001).

Nava testified that he sold heroin to Martinez–Gonzalez in 1997 and twice in 2000 and that Martinez–Gonzalez knew everybody in his family. Agents intercepted several calls involving Tomate, Martinez–Gonzalez, and Joel using code to discuss drug transactions. Agents observed Gonzalo and Tomate visit Martinez–Gonzalez's home shortly after Martinez–Gonzalez and Tomate engaged in telephone conversations using code to arrange heroin purchases. Based on all the evidence, the

jury could rationally deduce that Martinez–Gonzalez was involved in a single conspiracy to distribute heroin.

## B. Substantive Counts

■ Martinez–Gonzalez also challenges the sufficiency of the evidence underlying his conviction on two counts of possession with intent to deliver heroin. Count 13 alleged that Martinez–Gonzalez possessed 100 grams or more of heroin on June 9, 2000. In conversations recorded on June 9th, between Martinez–Gonzalez and Tomate and Tomate and his brother Joel, the participants used the phrases: "tripe tacos," and "It's for eight glasses ... Guys, of course." Martinez–Gonzalez asked Tomate "what happened with the—those guys," and said a "buddy was going to stop by so that he—so that he could take a look at it...." Three and one-half hours later, Martinez–Gonzalez again told Tomate he needed "about seven boys," stated that he "put one to work," and asked Tomate if he had "the other one." Shortly after this conversation, law enforcement agents followed Gonzalo (Tomate's roommate) from Tomate's apartment building to 7319 16th Avenue S.W., the home where Martinez–Gonzalez resided. Gonzalo and another man were admitted to the house and stayed about a half-hour.

At trial, Lepe explained that heroin sold in large quantities was divided in "pieces," with one piece being equal to 25 grams. Lepe testified that drug dealers sometimes refer to heroin pieces as "bring me a guy" or "muchachas." Nava stated that he sold pieces of heroin to Martinez–Gonzalez in 1997 and twice in 2000. Nava testified that "tripes" meant three pieces of heroin and he thought Martinez–Gonzalez had used that word before. Nava testified also that Tomate accompanied him once when he delivered heroin to Martinez–Gonzalez.

Count 32 charged Martinez–Gonzalez with possession of heroin with intent to distribute. On June 20, 2000, law enforcement agents recorded conversations between Tomate and Martinez–Gonzalez and Tomate and Joel. Tomate and Martinez–Gonzalez arranged to meet in forty minutes and discussed the "tripes" Martinez–Gonzalez requested. Then Tomate called Joel and asked if "there [are] three spoons," directed Joel to "measure ... the three spoons," and asked Joel to "bring them to me outside." Agents observed Joel hand something to Tomate in the parking lot of their apartment building. Then Tomate proceeded to Martinez–Gonzalez's residence, arriving with three other men. Martinez–Gonzalez exited his house and walked toward the rear of the house with Tomate. Tomate left five minutes later.

Agents intercepted other calls between Tomate and Martinez–Gonzalez using the term "guys." Lepe and Nava testified that "guys" and "tripes" are code for heroin pieces. Nava provided testimony about Martinez–Gonzalez's long term involvement in purchasing heroin. In addition, a paid informant, X–O–L Martinez–Lopez ("Lopez"), testified that he phoned Martinez–Gonzalez to arrange a heroin purchase. Martinez–Gonzalez agreed to meet Lopez and they discussed, but never completed, a drug transaction. Lopez's testimony provided additional evidence that Martinez–Gonzalez was involved in heroin distribution. Given this context, a rational jury could reasonably infer that the phone conversations between Martinez–Gonzalez and Tomate were discussions of drug transactions. Viewing all the evidence in the light most favorable to the Government, we conclude sufficient evidence existed to find that Martinez–Gonzalez committed the crimes of possession with intent to deliver heroin. Accordingly, we affirm Martinez–Gonzalez's convictions.

## II  Ruiz

Ruiz was convicted of conspiracy to distribute heroin and use of a telephone to facilitate a drug trafficking offense. Ruiz argues that his convictions should be reversed on several grounds. Because Ruiz failed to demonstrate that the district court erred or abused its discretion, we affirm.

### A.  Transcripts in the Jury Room

■ Ruiz argues that English translation transcripts of telephone calls should not have been allowed into the jury room because it unfairly emphasized portions of trial testimony favorable to the Government. "Where there is no dispute as to accuracy, we review for abuse of discretion the district court's decision" to allow the English translations of wiretap transcripts in the jury room. *United States v. Abonce–Barrera*, 257 F.3d 959, 963 (9th Cir.2001). "Under the abuse of discretion standard, we will not reverse unless we have a definite and firm conviction that the district court committed a clear error in judgment." *United States v. Hernandez*, 27 F.3d 1403, 1408 (9th Cir.1994) (citation omitted).

In *Abonce–Barrera*, we upheld the district court's admission of English translations of recordings which "provided key evidence of [the defendant's] involvement" in the drug distribution conspiracy. 257 F.3d at 962. Similarly, the district court here did not abuse its discretion by allowing the jury to take the transcripts into the jury room.

### B.  Admission of Alleged Hearsay Testimony

■ Ruiz argues that part of Nava's testimony was inadmissible because it did not satisfy the requirements of Federal

Rule of Evidence 801(d)(2)(E). Rule 801(d)(2)(E) provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. We review for abuse of discretion a district court's decision to admit evidence as an exception to the hearsay rule. *United States v. Hernandez–Herrera*, 273 F.3d 1213, 1217 (9th Cir. 2001).

Nava testified that he and Tomate would supply heroin to each other on occasion. Nava described an incident when Tomate asked to borrow some heroin. Nava testified that he agreed to loan Tomate the heroin and Tomate responded that he would pay Nava back when "Mr. Miguel [Ruiz] exchanged the ones he had brought to him," because "the ones he brought were no good." The district court concluded that "[t]hese statements helped to induce the transaction because they explained the reason why [Tomate] needed a loan of heroin, and also explained how he intended to repay that loan."

The district court did not abuse its discretion in concluding that Tomate's statements furthered the conspiracy. The statements were made to Nava, someone who had more than a minimal role in the conspiracy and who possessed a substantial interest in the conspiracy. *Cf. United States v. Moody* 778 F.2d 1380, 1382–83 (9th Cir.1985) (emphasizing the difference between statements made to someone with a "limited role" as an equipment manager and "one who possessed a substantial interest in the continuing operation of the conspiracy"). In this context, the district court did not abuse its discretion by concluding the statement was "in furtherance" of the conspiracy.

## C. Ineffective Assistance of Counsel

■ Ruiz claims he received ineffective assistance of counsel. Ordinarily, we do not reach claims of ineffective assistance of counsel on direct appeal, and we decline to do so here. *United States v. Ross*, 206 F.3d 896, 900 (9th Cir.2000). *See also United States v. Robinson*, 967 F.2d 287, 290 (9th Cir.1992) (stating that ineffective assistance of counsel is more properly raised by collateral attack unless the record is sufficient or there is an obvious denial of a defendant's Sixth Amendment right to counsel).

## D. Vouching

Ruiz argues also that the Assistant United States Attorney vouched for the Government's witness, Lepe, by asking him about his plea agreement on direct examination and by arguing in closing that Lepe was required to testify against Ruiz. Because Ruiz failed to raise this argument at trial, we review for plain error. *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir.1993). We should reverse "only if, viewing the error in the context of the entire record, the impropriety 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings, or where failing to reverse a conviction would amount to a miscarriage of justice.'" *Id.* (quoting *United States v. Molina*, 934 F.2d 1440, 1446 (9th Cir.1991)).

■ "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *Necoechea*, 986 F.2d at 1276. During direct examination of Lepe, the AUSA asked him about the specifics of his plea agreement. Lepe responded that he agreed "[t]o tell the truth and nothing but the truth and if [he] had to come and testify, [he] had to come and testify." This is not vouching. *See Necoechea*, 986 F.2d at 1278–80 (concluding that a prosecutor's elicitation of

testimony regarding a witness's plea agreement and its truthfulness provision was not vouching because "[t]he prosecutor's question [of whether the plea agreement required her to testify truthfully and cooperate] [did] not imply a guaranty of [the witness's] truthfulness, refer to extrarecord facts, or reflect a personal opinion" and declining to hold that "any reference to truthfulness provisions is plain error").

The AUSA's closing argument also did not involve vouching. The AUSA stated: "I don't apologize for putting on any of these co-conspirators [including Lepe] and requiring them to point the finger at who they were working with, even if its their own family. There's a higher ideal at work here and it's truth and the well-being of our nation." The AUSA did not imply a guarantee of the witness's truthfulness, refer to extra-record facts, or reflect a personal opinion. *See id.* The AUSA did not "vouch" for Lepe and, thus, no plain error occurred.

### E. Arguing Facts Not in Evidence

Ruiz contends that the AUSA during summation argued facts not in evidence when he characterized Ruiz's statements during cross-examination as a "confession." Because Ruiz did not object at trial, we review for plain error, reversing "only if, viewing the error in the context of the entire record, the impropriety 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings, or where failing to reverse a conviction would amount to a miscarriage of justice.'" *Necoechea,* 986 F.2d at 1276 (brackets in original) (quoting *United States v. Molina,* 934 F.2d 1440, 1446 (9th Cir.1991)).

Ruiz acknowledged on cross-examination that he discussed heroin with Tomate during one of their telephone conversations. Ruiz admitted also that he knew Tomate

and another individual were drug dealers and that Tomate was waiting for drugs so he could pay back money he owed Ruiz. Given Ruiz's admissions, the statements objected to do not fall into the "plain error" category.

### F. Cumulative Errors

Finally, Ruiz argues that the cumulative effect of the alleged errors denied him a fair trial. "Although individual errors looked at separately may not rise to the level of reversible error, their cumulative effect may nevertheless be so prejudicial as to require reversal." *Necoechea,* 986 F.2d at 1282. Ruiz demonstrated no individual errors; accordingly, no cumulative error occurred, and we affirm Ruiz's convictions.

## III  Mencia–Morales

Mencia–Morales claims that the district court failed to comply with former Federal Rule of Criminal Procedure 32(c) and erred in applying a two-level supervisory role sentencing enhancement. We review for clear error the district court's findings made during the sentencing phase, and review de novo the district court's interpretation of the sentencing guidelines and its compliance with Federal Rule of Criminal Procedure 32. *United States v. Williams,* 291 F.3d 1180, 1196 (9th Cir.2002) (citations omitted); *United States v. Herrera–Rojas,* 243 F.3d 1139, 1142 (9th Cir.2001).

Mencia–Morales argues that the district court violated Rule 32 because it allegedly did not resolve a discrepancy between the presentence report's ("PSR") version of his relationship with a co-defendant, and Mencia–Morales's characterization of the relationship. Former federal Rule of Criminal Procedure 32(c)(1) provided that "[f]or each matter controverted, the [sentencing] court must make either a finding on the

allegation or a determination that no finding is necessary because the controverted matter will not be taken into account."

At sentencing, defense counsel agreed with the district court that he did not have any objection to the accuracy of the facts contained in PSR, and he agreed that Mencia–Morales's co-defendant said the things the PSR attributed to him. Mencia–Morales, therefore, "did not challenge the accuracy of any information in the [PSR], only inferences drawn from it." *United States v. Rigby,* 896 F.2d 392, 394 (9th Cir.1990). Mencia–Morales merely requested that the district court accord more weight to his characterization of his relationship with the co-defendant, and to the letter he submitted in support, than to the facts in the PSR.

The court considered Mencia–Morales's information but resolved the issue against him, explaining "that the facts stated in paragraphs 34 through 38 [of the PSR] provide by a preponderance of the evidence the fact that [Mencia–Morales] was such a leader, supervisor, that pursuant to the guidelines, two levels should be added." *See id.* at 394 (concluding the district court "clearly explained the basis for its ruling, finding that the presentence report and addendum were correct"). Mencia–Morales has not demonstrated that the district court failed to comply with Rule 32.

The district court also did not err by applying the supervisory role enhancement. The Guidelines provide for an increase in a base offense level if a defendant "was an organizer, leader, manager, or supervisor in any criminal activity." U.S.S.G. § 3B1.1(c). "[T]he district court "may, without error, rely on evidence pre-

sented in the PSR to find by a preponderance of the evidence that the facts underlying a sentence enhancement have been established." *United States v. Maldonado,* 215 F.3d 1046, 1051 (9th Cir.2000). The PSR detailed how a co-defendant frequently acted under Mencia–Morales's direction and, thus, contained sufficient information for the district court to apply the enhancement. Accordingly, we affirm Mencia–Morales's sentence.

AFFIRMED.